Joel E. Elkins (SBN 256020)
jelkins@weisslawllp.com
**WEISSLAW LLP**
9100 Wilshire Blvd. #725 E.
Beverly Hills, CA 90210
Telephone: 310/208-2800
Facsimile:  310/209-2348

*Attorneys for Plaintiff*

# UNITED STATES DISTRICT COURT

# NORTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| CATHERINE COFFMAN, | Case No. |
| Plaintiff, | |
| vs. | **COMPLAINT FOR VIOLATIONS OF THE FEDERAL SECURITIES LAWS** |
| WEINGARTEN REALTY INVESTORS, ANDREW M. ALEXANDER, STANFORD J. ALEXANDER, SHELAGHMICHAEL C. BROWN, STEPHEN A. LASHER, THOMAS L. RYAN, DOUGLAS W. SCHNITZER, C. PARK SHAPER, and MARC J. SHAPIRO, | JURY TRIAL DEMANDED |
| Defendants. | |

Plaintiff Catherine Coffman ("Plaintiff"), on behalf of herself and all others similarly situated, upon information and belief, including an examination and inquiry conducted by and through her counsel, except as to those allegations pertaining to Plaintiff, which are alleged upon personal belief, alleges the following for her Complaint:

- 1 -
COMPLAINT FOR VIOLATIONS OF THE FEDERAL SECURITIES LAWS

## NATURE OF THE ACTION

1. This is an action brought by Plaintiff against Weingarten Realty Investors ("Weingarten" or the "Company") and the members of Weingarten's Board of Trust Managers (the "Board" or the "Individual Defendants") for their violations of Sections 14(a) and 20(a) of the Securities Exchange Act of 1934 (the "Exchange Act"), 15 U.S.C. §§ 78n(a), 78t(a), and U.S. Securities and Exchange Commission ("SEC") Rule 14a-9, 17 C.F.R. § 240.14a-9, and to enjoin the vote on a proposed transaction, pursuant to which Weingarten will be acquired by Kimco Realty Corporation ("Kimco") (the "Proposed Transaction").

2. On April 15, 2021, Weingarten and Kimco issued a joint press release announcing that they had entered into an Agreement and Plan of Merger dated April 15, 2021 (the "Merger Agreement") to sell Weingarten to Kimco. Under the terms of the Merger Agreement, each Weingarten stockholder will receive: (i) 1.408 newly issued shares of Kimco common stock; and (ii) $2.89 in cash for each share of Weingarten common stock they own (the "Merger Consideration"). On a pro forma basis, following the closing of the Proposed Transaction, Kimco shareholders are expected to own approximately 71% of the combined company's equity, and Weingarten shareholders are expected to own approximately 29%. The Proposed Transaction is valued at approximately $3.87 billion.

3. On May 28, 2021, Kimco filed a Form S-4 Registration Statement (as amended, the "Registration Statement") with the SEC. The Registration Statement, which recommends that Weingarten stockholders vote in favor of the Proposed Transaction, omits or misrepresents material information concerning, among other things: (i) the Company's and Kimco's financial projections and the data and inputs underlying the financial valuation analyses that support the fairness opinion provided by the Company's financial advisor J.P. Morgan & Co. LLC ("J.P. Morgan"); and (ii) the

background of the Proposed Transaction. Defendants authorized the issuance of the false and misleading Registration Statement in violation of Sections 14(a) and 20(a) of the Exchange Act.

4.    In short, unless remedied, Weingarten's public stockholders will be irreparably harmed because the Registration Statement's material misrepresentations and omissions prevent them from making a sufficiently informed voting or appraisal decision on the Proposed Transaction. Plaintiff seeks to enjoin the stockholder vote on the Proposed Transaction unless and until such Exchange Act violations are cured.

**JURISDICTION AND VENUE**

5.    This Court has jurisdiction over the claims asserted herein for violations of Sections 14(a) and 20(a) of the Exchange Act and Rule 14a-9 promulgated thereunder pursuant to Section 27 of the Exchange Act, 15 U.S.C. § 78aa, and 28 U.S.C. §1331 (federal question jurisdiction).

6.    The Court has jurisdiction over defendants because each defendant is either a corporation that conducts business in and maintains operations in this District, or is an individual who has sufficient minimum contacts with this District so as to render the exercise of jurisdiction by this Court permissible under traditional notions of fair play and substantial justice.

7.    Venue is proper in this District under Section 27 of the Exchange Act, 15 U.S.C. § 78aa, as well as under 28 U.S.C. § 1391 because: (i) the Company owns and maintains several of its properties in this District; and (ii) defendants have received substantial compensation in this District by doing business here and engaging in numerous activities that had an effect in this District.

**THE PARTIES**

8.    Plaintiff is, and has been at all times relevant hereto, a continuous stockholder of Weingarten.

9.    Defendant Weingarten is a real estate investment trust ("REIT") organized under the laws of Texas, with its principal executive offices located at 2600 Citadel Plaza Drive, Suite 125,

Houston, Texas 77008 and 17 properties located throughout California. The Company is a shopping center owner, manager and developer. Weingarten's common stock trades on the New York Stock Exchange under the ticker symbol "WRI."

10. Defendant Andrew M. Alexander ("Andrew Alexander") has been Chairman of the Board since February 2019, Chief Executive Officer ("CEO") of the Company since 2001, President of the Company since 1997, and a Trust Manager of the Company since 1983.

11. Defendant Stanford J. Alexander ("Stanford Alexander") is Chairman Emeritus and has been a Trust Manager of the Company since 1956. Defendant Stanford Alexander served as Chairman of the Board from 1993 until 2019, CEO of the Company from 1991 to 2000 and President of the Company from 1962 to 1992.

12. Defendant Shelaghmichael C. Brown ("Brown") has been a Trust Manager of the Company since 2012.

13. Defendant Stephen A. Lasher ("Lasher") has been a Trust Manager of the Company since 1980.

14. Defendant Thomas L. Ryan ("Ryan") has been a Trust Manager of the Company since 2012.

15. Defendant Douglas W. Schnitzer ("Schnitzer") has been a Trust Manager of the Company since 1984.

16. Defendant C. Park Shaper ("Shaper") has been a Trust Manager of the Company since 2007.

17. Defendant Marc. J. Shapiro ("Shapiro") has been a Trust Manager of the Company since 1985.

18. Defendants identified in paragraphs 10-17 are referred to herein as the "Board" or the "Individual Defendants."

COMPLAINT FOR VIOLATIONS OF THE FEDERAL SECURITIES LAWS

## OTHER RELEVANT ENTITIES

19. Kimco is a REIT headquartered in Jericho, NY that is one of North America's largest publicly traded owners and operators of open-air, grocery-anchored shopping centers and mixed-use assets. Kimco's portfolio is primarily concentrated in the first-ring suburbs of the top major metropolitan markets, including those in high barrier-to-entry coastal markets and rapidly expanding Sun Belt cities, with a tenant mix focused on essential, necessity-based goods and services that drive multiple shopping trips per week. Kimco has specialized in shopping center ownership, management, acquisitions, and value enhancing redevelopment activities for more than 60 years. As of December 31, 2020, Kimco owned interests in 400 U.S. shopping centers and mixed-use assets comprising 70 million square feet of gross leasable space. Kimco's common stock trades on the New York Stock Exchange under the ticker symbol "KIM."

## SUBSTANTIVE ALLEGATIONS

**Background of the Company**

20. Weingarten is a REIT organized under the Texas Business Organizations Code. Weingarten, and its predecessor entity, began the ownership of shopping centers and other commercial real estate in 1948. Weingarten's primary business is leasing space to tenants in the shopping centers it owns or leases. These centers may be mixed-use properties that have both retail and residential components. Weingarten also provides property management services for which it charges fees to joint ventures where it is a partner. As of March 31, 2021, Weingarten owned or operated under long-term leases, either directly or through its interest in real estate joint ventures or partnerships, a total of 156 properties, which are located in 15 states spanning the country from coast to coast. Also as of March 31, 2021, Weingarten owned interests in 22 parcels of land held for development that totaled approximately 11.5 million square feet.

21. On February 25, 2021, Weingarten announced its first quarter 2020 financial results. Leasing production was the highest fourth quarter production in annualized base minimum rents since 2015. The Company executed 81 new leases and 91 renewals representing $14.6 million in base minimum rent. Weingarten also announced that the common dividend per share will increase 67% to $0.30 per quarter. Commenting on the Company's performance, Weingarten Executive Vice President and Chief Operating Officer Johnny Hendrix stated:

> We are extremely pleased with the continued improvement in cash collections in the quarter as it reflects the strength of our transformed portfolio of quality properties. While we continue to work our way through issues with our tenants, there are several categories where our tenants are healthy, thriving and expanding. We are also very excited with the strength of our leasing activity as the number of deals we completed in the fourth quarter is the highest we have produced in a fourth quarter since 2015. Leasing activity continues to accelerate in 2021 with approximately $10 million of annualized revenue from leases that are signed but not yet paying rent. Additionally, we have a robust pipeline of over 60 new leases that are under letter of intent and negotiating in our legal department with annualized rents greater than $7 million that makes us optimistic as we look to the future.

**The Proposed Transaction**

22. On April 15, 2021, Weingarten and Kimco issued a joint press release announcing the Proposed Transaction. The press release states, in relevant part:

> JERICHO, N.Y. & HOUSTON--Kimco Realty Corp. (NYSE: KIM), one of North America's largest publicly traded owners and operators of open-air, grocery-anchored shopping centers and mixed-use assets, and Weingarten Realty Investors (NYSE: WRI), a grocery-anchored Sun Belt shopping center owner, manager and developer, today announced that they have entered into a definitive merger agreement under which Weingarten will merge with and into Kimco, with Kimco continuing as the surviving public company. The transaction brings together two industry-leading retail real estate platforms with highly complementary portfolios, creating the preeminent open-air shopping center and mixed-use real estate owner in the country. The increased scale in targeted growth markets, coupled with a broader pipeline of redevelopment opportunities, positions the company to create significant value for its shareholders. The combined company is expected to have a pro forma equity market capitalization of approximately $12.0 billion and a pro forma total enterprise value of approximately $20.5 billion.
>
> Under the terms of the agreement, each Weingarten common share will be converted into 1.408 newly issued shares of Kimco common stock plus $2.89 in cash. Based on the closing stock price for Kimco on April 14, 2021, this represents a total

consideration of approximately $30.32 per Weingarten share.  On a pro forma basis, following the closing of the transaction, Kimco shareholders are expected to own approximately 71% of the combined company's equity, and Weingarten shareholders are expected to own approximately 29%.  The parties currently expect the transaction to close during the second half of 2021, subject to customary closing conditions, including the approval of both Kimco and Weingarten shareholders.  This strategic transaction was unanimously approved by the Board of Directors of Kimco and the Board of Trust Managers of Weingarten.

The merger will create a national operating portfolio of 559 open-air grocery-anchored shopping centers and mixed-use assets comprising approximately 100 million square feet of gross leasable area.  These properties are primarily concentrated in the top major metropolitan markets in the United States.  The combined company is expected to benefit from increased scale and density in key Sun Belt markets, enhanced asset quality, tenant diversity, a larger redevelopment pipeline and a deleveraged balance sheet.  As a result, the combined company should be uniquely positioned to drive further sustained growth in net operating income (NOI) and asset value creation through continued strategic leasing and asset management.

"This business combination is highly strategic, creating a stronger platform that is even more capable of delivering long-term growth and value creation," said Conor Flynn, Kimco's Chief Executive Officer.  "Not only will the merged company and its shareholders enjoy a larger, higher quality, more diversified portfolio with significant embedded growth opportunities, the transaction also reduces the combined company's leverage, creating a stronger financial profile.  This combination reflects our conviction in the grocery-anchored shopping center category, which has performed well throughout the pandemic and provides last mile locations that are more valuable than ever due to their hybrid role as both shopping destinations and omnichannel fulfillment epicenters.  It also gives us even greater density in the Sun Belt markets we are targeting as well as visibility into the trends shaping necessity-based retail."

Andrew "Drew" Alexander, Chairman, President and Chief Executive Officer of Weingarten, stated, "Combining these highly complementary platforms is a win-win for shareholders of both companies.  After examining the deal from every angle, it became increasingly clear that the potential of the integrated business is much greater than the sum of its parts.  The combined company's increased size and scale, together with its financial strength, should drive an advantageous cost of capital, allowing the combined company to more readily pursue value creation opportunities.  We are excited to deliver this transaction to our shareholders, who will realize compelling and immediate value while also benefiting from the upside potential associated with owning the industry's preeminent open-air shopping center and mixed-use REIT."

**Summary of Strategic Benefits**

The merger of Kimco and Weingarten is expected to create a number of operational and financial benefits, including:

- **Enhanced Asset Diversification and Quality**: Adding Weingarten's collection of 159 high-quality, open-air grocery-anchored shopping centers and mixed-use properties advances Kimco's strategy of providing tenants and shoppers with greater last-mile fulfillment opportunities.
- **Expanded Geographic Reach in High-Growth, First-Ring Suburbs of Core Markets**: The transaction will grow Kimco's presence in strategic Sun Belt markets such as Houston, Miami, Phoenix, Atlanta and Orlando, boasting positive demographic and migration trends along with strong growth prospects. The Sun Belt and high-barrier-to-entry top coastal markets will represent more than 82% of the combined company's total annualized base rent (ABR).
- **Greater Tenant Diversity**: The combined company's top ten tenants are essential, industry-leading grocers such as Kroger, Whole Foods and Walmart and best-in-class retailers such as TJX, Ross Stores and Burlington. These brands will represent approximately 19.3% of total ABR, with no single tenant representing more than approximately 4%.
- **Compelling Value Creation Pipeline**: The combination of Weingarten's largely funded and de-risked development pipeline, together with Kimco's significant redevelopment projects and entitlements embedded in its existing portfolio, present compelling future growth opportunities. Most of these projects are located in markets where Kimco has an existing presence.
- **Substantial Operational Savings and Corporate Synergies**: The combined company is expected to realize annualized cost synergies of $35 to $38 million on a GAAP basis (excluding accounting adjustments) and $31 to $34 million on a cash basis. These expected savings are attributable to both companies' complementary business operations and significant regional overlap in high-growth Sun Belt markets where economies of scale can be realized. These synergies are expected to be substantially realized in the first full fiscal year post completion of the transaction.
- **Earnings Accretion and NOI Growth Opportunities**: Upon closing, the transaction is expected to be immediately accretive to earnings metrics. The combined company is also well positioned to increase cash flow at the property level by marking rents to market rates, realizing contractual rent increases, re-merchandising, growing portfolio occupancy and pursuing new value creation opportunities.
- **Increased Financial Strength and Flexibility**: The business combination will further strengthen Kimco's balance sheet by reducing net debt plus preferred to EBITDA. As a larger, lower leveraged company, Kimco is expected to have more cost-effective access to capital and benefit from earnings enhancement as existing debt matures in the coming years. This improved credit profile and greater liquidity put Kimco on a path toward potential future credit ratings upgrades.

**Leadership and Organization**

The combined company is committed to retaining a strong, highly qualified and diverse Board that has the requisite skills, knowledge and experience to oversee the

company and its long-term strategic growth and performance. The number of directors on Kimco's Board of Directors will be expanded to nine, with one member of the existing Board of Trust Managers of Weingarten to be appointed to the Kimco Board. Milton Cooper will continue to serve as Executive Chairman of the Board of Directors of the combined company. Mary Hogan Preusse will continue to serve as Lead Independent Director for the combined company.

The Kimco management team will lead the combined company, with Conor Flynn as Chief Executive Officer, Ross Cooper as President and Chief Investment Officer, David Jamieson as Chief Operating Officer and Glenn G. Cohen as Chief Financial Officer. The approach to integration planning will draw from the best practices of both companies to ensure continuity for tenants, employees and other stakeholders.

Upon completion of the merger, the company's headquarters will remain in Jericho, N.Y. The company will retain the Kimco name and will continue to trade under the ticker symbol KIM (NYSE).

**Insiders' Interests in the Proposed Transaction**

23.     Weingarten insiders are the primary beneficiaries of the Proposed Transaction, not the Company's public stockholders. The Board and the Company's executive officers are conflicted because they will have secured unique benefits for themselves from the Proposed Transaction not available to Plaintiff and the public stockholders of Weingarten.

24.     Weingarten insiders stand to reap substantial financial benefits for securing the deal with Kimco. Pursuant to the Merger Agreement, all outstanding Company restricted share awards will vest and convert into the right to receive the Merger Consideration. The following table summarizes the value of restricted share awards that Company insiders stand to receive:

| Name | Number of WRI Restricted Share Awards | Amount |
|---|---|---|
| **_Executive Officers_** | | |
| Andrew M. Alexander | 371,718 | $11,270,490 |
| Stanford J. Alexander | 0 | $ 0 |
| Johnny L. Hendrix | 164,933 | $ 5,000,769 |
| Stephen C. Richter | 164,933 | $ 5,000,769 |
| | | |
| **_Non-Employee Trust Managers_** | | |
| Shelaghmichael C. Brown | 37,647 | $ 1,141,457 |
| Stephen A. Lasher | 27,295 | $ 827,584 |
| Thomas L. Ryan | 27,295 | $ 827,584 |
| Douglas W. Schnitzer | 74,636 | $ 2,262,964 |
| C. Park Shaper | 27,295 | $ 827,584 |
| Marc J. Shapiro | 59,904 | $ 1,816,289 |

25. Moreover, under the terms of the Merger Agreement, the surviving corporation will make payments following the effective time in respect of prorated target bonus and Weingarten restricted share award opportunities with respect to 2021 to certain Company insiders. The following table summarizes the value of potential incentive payments that Company insiders may receive upon completion of the merger:

| Name | WRI Restricted Share Award Opportunity | Target Bonus Opportunity |
|---|---|---|
| **_Executive Officers_** | | |
| Andrew M. Alexander | $3,500,000 | $1,000,000 |
| Stanford J. Alexander | $ 0 | $ 0 |
| Johnny L. Hendrix | $1,400,000 | $ 440,000 |
| Stephen C. Richter | $1,400,000 | $ 440,000 |

26. In addition, Kimco expects to enter into a consulting agreement with defendant Andrew Alexander, to be effective upon the closing of the Proposed Transaction. The consulting agreement is expected to provide that defendant Andrew Alexander will serve as a consultant to

Kimco for the one-year period following the effective time of the merger, subject to one-year renewals upon notice by Kimco, for an annual consulting fee of $150,000.

27. Further, if they are terminated in connection with the Proposed Transaction, Weingarten's named executive officers stand to receive substantial cash severance payments as set forth in the following table:

| Name | Cash[1] | Equity[2] | Welfare Benefits[3] | Tax Reimbursement[4] | Total |
|---|---|---|---|---|---|
| Andrew M. Alexander | $8,382,000 | $7,109,760 | $1,319,202 | $0 | $16,810,962 |
| Stanford J. Alexander | 0 | 0 | 0 | 0 | 0 |
| Johnny L. Hendrix | 4,186,767 | 3,144,863 | 447,224 | 2,553,726 | 10,332,580 |
| Stephen C. Richter | 4,186,767 | 3,144,501 | 507,182 | 2,748,815 | 10,587,265 |

**The Registration Statement Contains Material Misstatements or Omissions**

28. The defendants filed a materially incomplete and misleading Registration Statement with the SEC and disseminated it to Weingarten's stockholders. The Registration Statement misrepresents or omits material information that is necessary for the Company's stockholders to make an informed decision whether to vote in favor of the Proposed Transaction or seek appraisal.

29. Specifically, as set forth below, the Registration Statement fails to provide Company stockholders with material information or provides them with materially misleading information concerning: (i) the Company's and Kimco's financial projections and the data and inputs underlying the financial valuation analyses that support the fairness opinion provided by the Company's financial advisor, J.P. Morgan; and (ii) the background of the Proposed Transaction.

*Material Omissions Concerning Weingarten's and Kimco's Financial Projections and J.P. Morgan's Financial Analyses*

30. The Registration Statement omits material information regarding the Company's financial projections.

31. With respect to Weingarten's and Kimco's financial projections, the Registration Statement fails to disclose all line items underlying the calculation of: (i) Cash NOI; (ii) Funds From Operation ("FFO") as Adjusted per share; and (iii) Unlevered cash flow.

32. The Registration Statement omits material information regarding J.P. Morgan's financial analyses.

33. The Registration Statement describes J.P. Morgan's fairness opinion and the various valuation analyses it performed in support of its opinion. However, the description of J.P. Morgan's fairness opinion and analyses fails to include key inputs and assumptions underlying these analyses. Without this information, as described below, Weingarten's public stockholders are unable to fully understand these analyses and, thus, are unable to determine what weight, if any, to place on J.P. Morgan's fairness opinion in determining whether to vote in favor of the Proposed Transaction or seek appraisal.

34. With respect to J.P. Morgan's *Public Trading Multiples* analysis, the Registration Statement fails to disclose the individual multiples and financial metrics for each of the comparable companies observed by J.P. Morgan in the analysis.

35. With respect to J.P. Morgan's *Discounted Cash Flow Analysis*, the Registration Statement fails to disclose: (i) unlevered free cash flows for Weingarten and Kimco used in the analysis and all underlying line items; (ii) quantification of the terminal values of each of Weingarten and Kimco; (iii) quantification of the inputs and assumptions underlying the discount rates ranging from 7.00% to 7.50% for Weingarten and 6.75% to 7.25% for Kimco; and (iv) net debt for each of Weingarten and Kimco as of December 31, 2020.

36. Without such undisclosed information, Weingarten stockholders cannot evaluate for themselves whether the financial analyses performed by J.P. Morgan were based on reliable inputs and assumptions or whether they were prepared with an eye toward ensuring that a positive fairness

opinion could be rendered in connection with the Proposed Transaction. In other words, full disclosure of the omissions identified above is required in order to ensure that stockholders can fully evaluate the extent to which J.P. Morgan's opinion and analyses should factor into their decision whether to vote in favor of or against the Proposed Transaction or seek appraisal.

37. The omission of this material information renders the statements in the "Certain Unaudited Prospective Financial Information" and "Opinion of WRI's Financial Advisor" sections of the Registration Statement false and/or materially misleading in contravention of the Exchange Act.

***Material Omissions Concerning the Background of the Proposed Transaction***

38. The Registration Statement fails to disclose material information concerning the background process leading to the Proposed Transaction.

39. The Registration Statement fails to disclose whether the confidentiality agreements the Company executed with each of Party A and Party B include standstill provisions and/or "don't-ask, don't-waive" ("DADW") standstill provisions that are still in effect and currently precluding Party A or Party B from making a topping bid for the Company.

40. The failure to disclose the existence of DADW provisions creates the false impression that a potential bidder who entered into a confidentiality agreement could make a superior proposal for the Company. If the potential acquirer's non-disclosure agreement contains a DADW provision, then that potential bidder can only make a superior proposal by (i) breaching the confidentiality agreement—since in order to make the superior proposal, it would have to ask for a waiver, either directly or indirectly; or by (ii) being released from the agreement, which if action has been done, is omitted from the Proxy Statement.

41.     Any reasonable Weingarten stockholder would deem the fact that a likely topping bidder for the Company may be precluded from making a topping bid for the Company to significantly alter the total mix of information.

42.     The omission of this information renders the statements in the "Background of the Merger" section of the Registration Statement false and/or materially misleading in contravention of the Exchange Act.

43.     The Individual Defendants were aware of their duty to disclose the above-referenced omitted information and acted negligently (if not deliberately) in failing to include this information in the Registration Statement.  Absent disclosure of the foregoing material information prior to the stockholder vote on the Proposed Transaction, Plaintiff and the other stockholders of Weingarten will be unable to make an informed voting or appraisal decision in connection with the Proposed Transaction and are thus threatened with irreparable harm warranting the injunctive relief sought herein.

## CLAIMS FOR RELIEF

### COUNT I

**Claims Against All Defendants for Violations of Section 14(a) of the Exchange Act and Rule 14a-9 Promulgated Thereunder**

44.     Plaintiff repeats all previous allegations as if set forth in full.

45.     During the relevant period, defendants disseminated the false and misleading Registration Statement specified above, which failed to disclose material facts necessary to make the statements, in light of the circumstances under which they were made, not misleading in violation of Section 14(a) of the Exchange Act and SEC Rule 14a-9 promulgated thereunder.

46.     By virtue of their positions within the Company, the defendants were aware of this information and of their duty to disclose this information in the Registration Statement.  The Registration Statement was prepared, reviewed, and/or disseminated by the defendants.  It

misrepresented and/or omitted material facts, including material information about the Company's and Kimco's financial projections, the data and inputs underlying the financial valuation analyses that support the fairness opinion provided by J.P. Morgan, and the background of the Proposed Transaction. The defendants were at least negligent in filing the Registration Statement with these materially false and misleading statements.

47. The omissions and false and misleading statements in the Registration Statement are material in that a reasonable stockholder would consider them important in deciding how to vote on the Proposed Transaction or seek to exercise their appraisal rights.

48. By reason of the foregoing, the defendants have violated Section 14(a) of the Exchange Act and SEC Rule 14a-9(a) promulgated thereunder.

49. Because of the false and misleading statements in the Registration Statement, Plaintiff is threatened with irreparable harm, rendering money damages inadequate. Therefore, injunctive relief is appropriate to ensure defendants' misconduct is corrected.

### COUNT II

**Claims Against the Individual Defendants for
Violations of Section 20(a) of the Exchange Act**

50. Plaintiff repeats all previous allegations as if set forth in full.

51. The Individual Defendants acted as controlling persons of Weingarten within the meaning of Section 20(a) of the Exchange Act as alleged herein. By virtue of their positions as officers and/or directors of Weingarten, and participation in and/or awareness of the Company's operations and/or intimate knowledge of the false statements contained in the Registration Statement filed with the SEC, they had the power to influence and control and did influence and control, directly or indirectly, the decision-making of the Company, including the content and dissemination of the various statements which Plaintiff contends are false and misleading.

Case 5:21-cv-05399-NC   Document 1   Filed 07/14/21   Page 16 of 17

52. Each of the Individual Defendants was provided with or had unlimited access to copies of the Registration Statement and other statements alleged by Plaintiff to be misleading prior to and/or shortly after these statements were issued and had the ability to prevent the issuance of the statements or cause the statements to be corrected.

53. In particular, each of the Individual Defendants had direct and supervisory involvement in the day-to-day operations of the Company, and, therefore, is presumed to have had the power to control or influence the particular transactions giving rise to the securities violations as alleged herein, and exercised the same. The Registration Statement at issue contains the unanimous recommendation of each of the Individual Defendants to approve the Proposed Transaction. They were, thus, directly involved in the making of the Registration Statement.

54. In addition, as the Registration Statement sets forth at length, and as described herein, the Individual Defendants were each involved in negotiating, reviewing, and approving the Proposed Transaction. The Registration Statement purports to describe the various issues and information that they reviewed and considered—descriptions the Company directors had input into.

55. By virtue of the foregoing, the Individual Defendants have violated Section 20(a) of the Exchange Act.

56. As set forth above, the Individual Defendants had the ability to exercise control over and did control a person or persons who have each violated Section 14(a) and SEC Rule 14a-9, promulgated thereunder, by their acts and omissions as alleged herein. By virtue of their positions as controlling persons, these defendants are liable pursuant to Section 20(a) of the Exchange Act. As a direct and proximate result of defendants' conduct, Weingarten's stockholders will be irreparably harmed.

**PRAYER FOR RELIEF**

WHEREFORE, Plaintiff demands judgment and preliminary and permanent relief, including

- 16 -
COMPLAINT FOR VIOLATIONS OF THE FEDERAL SECURITIES LAWS

injunctive relief, in her favor on behalf of Weingarten, and against defendants, as follows:

    A.    Preliminarily and permanently enjoining defendants and all persons acting in concert with them from proceeding with, consummating, or closing the Proposed Transaction and any vote on the Proposed Transaction, unless and until defendants disclose and disseminate the material information identified above to Weingarten stockholders;

    B.    In the event defendants consummate the Proposed Transaction, rescinding it and setting it aside or awarding rescissory damages to Plaintiff;

    C.    Declaring that defendants violated Sections 14(a) and/or 20(a) of the Exchange Act, as well as SEC Rule 14a-9 promulgated thereunder;

    D.    Awarding Plaintiff the costs of this action, including reasonable allowance for Plaintiff's attorneys' and experts' fees; and

    E.    Granting such other and further relief as this Court may deem just and proper.

## JURY DEMAND

Plaintiff demands a trial by jury on all claims and issues so triable.

Dated: July 14, 2021

**WEISSLAW LLP**
Joel E. Elkins

By: */s/ Joel E. Elkins*

Joel E. Elkins
9100 Wilshire Blvd. #725 E.
Beverly Hills, CA 90210
Telephone: 310/208-2800
Facsimile: 310/209-2348
      -and-
Richard A. Acocelli
1500 Broadway, 16th Floor
New York, NY 10036
Telephone: 212/682-3025
Facsimile: 212/682-3010

*Attorneys for Plaintiff*